**Tagged Opinion**



**ORDERED in the Southern District of Florida on December 22, 2010.**

John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

    Lillian A. **DiStefano**,

           Debtor.
_____/

Case No.: 10-19596-BKC-JKO

Chapter 7

**Order Sustaining Trustee's Objection to Debtor's Claim of Exemptions [ECF No. 14]**

When the Debtor filed this case, she claimed three Hyundai vehicles as exempt on Schedule C.[1] At the first 341 Meeting of Creditors, Trustee Kenneth A. Welt inquired about the three vehicles and concluded that they were not exempt.

The Trustee filed an Objection to Debtor's Claim of Exemptions at ECF No. 14, and the Debtor responded by amending her Statement of Financial Affairs to list the owner of the three vehicles as "Pedro Fonseca Equitable Owner via potential resulting Trust."[2] The Debtor argues that the three vehicles are either (1) exempt or (2) not property of this bankruptcy estate.

---

[1] *See* [ECF No. 1], at 12.

[2] *See* [ECF No. 17], at 5.

*Discussion*

The Debtor's father, Mr. Fonseca, purchased all of the vehicles for use by the Debtor's daughters. He paid in full with no financing, had no financial assistance from the Debtor to make the purchases, and titled all three vehicles in the Debtor's name with no custodial notation that the Debtor was titular owner for the benefit of her daughters.

Section 710.111 of the Florida Statutes provides that custodial property is created and a transfer is made whenever:

> A certificate of title issued by a department or agency of a state or of the United States which evidences title to tangible personal property is either:
>
> 1. Issued in the name of the transferor, an adult other than the transferor, or a trust company, followed in substance by the words: "as custodian for   (name of minor)   under the Florida Uniform Transfers to Minors Act"; or
>
> 2. Delivered to an adult other than the transferor or to a trust company, endorsed to that person followed in substance by the words: "as custodian for   (name of minor)   under the Florida Uniform Transfers to Minors Act" . . . [3]

This custodial notation is absent from the certificates of title, which reflect solely the Debtor's name. The Debtor stated that she chose to title the cars in her name rather than her daughters' names because she thought auto insurance would be cheaper that way.[4]

The decision to title a vehicle in one name or another has consequences. Where a certificate of title exists, it "invariably establishes presumptive ownership"[5] and this Debtor

---

[3] Fla. Stat. 710.111(1)(f).

[4] *See* [ECF No. 27-1], at 5 (the Debtor at her 341 meeting stating, "the reason they're in my name is because to put them in their name the insurance would have been astronomical").

[5] *In re Kirk*, 381 B.R. 800, 802 (Bankr. M.D. Fla 2007) (quoting *Nash Miami Motors, Inc. v. Bandel*, 47 So. 2d 701, 703 (Fla. 1950)); *see also Cannova v. Carran*, 92 So.2d 614, 619 (Fla. 1957) (holding that a person is presumed to own all property that is titled in her name) ("The presumption is that [the individual] was the owner of all of the

presumptively owns these vehicles free and clear of encumbrances.  If the Debtor's father were a debtor in bankruptcy rather than the Debtor herself, these vehicles would presumptively not be property of his estate.  Were the Debtor's now-adult children debtors in bankruptcy, these cars would presumptively not be property of their estates.  The certificates of title show that the Debtor owns these vehicles free and clear, they are presumptively property of her bankruptcy estate, and I do not have enough evidence before me to rebut that presumption because the affidavits offered by the Debtor are self serving and conflict with her own 341 testimony as well as Mr. Fonseca's notations on the checks used to purchase the vehicles.

The Debtor's alternative argument regarding a "potential resulting trust" is also unpersuasive because the daughters did not contribute to the purchase price of the vehicles to support an equitable theory of resulting trust.  The checks written by Mr. Fonseca include the notation "New Car for Lily"[6] (presumably shorthand Lillian DiStefano, the Debtor) which at best does not evidence intent to create a trust and at worst can be interpreted as an express disclaimer by Mr. Fonseca of any retention of interest.  "The burden of establishing the existence of a trust

---

property which stood in his name. The quantum of proof required to overcome such presumption is ably discussed in *Quinn v. Phipps*, 1927, 93 Fla. 805, 113 So. 419, 422, 54 A.L.R. 1173 and numerous other cases of this court. In the *Quinn* case, *supra*, we said: 'From an examination of the textbooks and many English and American cases touching this question the law seems well settled that a court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold. * * * 'This court has repeatedly announced the rule that a constructive trust may be proven by parol testimony, but that the evidence to establish such a trust must be so clear, strong, and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. *Lofton v. Sterrett*, 23 Fla. 565, 2 So. 837; *Geter v. Simmons*, 57 Fla. 423, 49 So. 131; *Johnston v. Sherehouse*, 61 Fla. 647, 54 So. 892; *Rogero v. Rogero*, 66 Fla. 6, 62 So. 899; *McGill v. Chappelle*, 71 Fla. 479, 71 So. 836.' (Emphasis added.) The Quinn case, *supra*, has been cited and adhered to in many decisions of this Court. *See Lightfoot v. Rogers*, Fla. 1951, 54 So.2d 237; *Simpson v. Hoffman*, Fla.1954, 75 So.2d 703; *Tillman v. Pitt Cole Co.*, Fla.1955, 82 So.2d 672; and *Lindley v. Lindley*, Fla.1955, 84 So.2d 17, 20.").

[6]  *See* [ECF No. 27], Composite Exhibit E, Check No. 436, payable to King Hyundai, dated April 21, 2006.

relationship is on the party claiming the benefit of such a relationship."[7] The concept of a resulting trust is not found in contract but "arises by implication of law and is founded on the presumed intention of the parties that the one furnishing the money should have the beneficial interest, while the other held title for convenience or for a collateral purpose."[8] The uncontroverted evidence before me is that these three cars were driven by the Debtor and/or her daughters, not by Mr. Fonseca. He was therefore neither the legal owner nor enjoying a beneficial interest in these cars. Further, "a resulting trust arises, 'where a person furnishes money to purchase property in the name of another, with both parties intending at the time that the legal title be held by the named grantee for the benefit of the unnamed purchaser of the property.'"[9] The undisputed facts of this case show that Mr. Fonseca did not want to retain a beneficial interest in the vehicles, and the Debtor conceded that point at her 341 Meeting of Creditors.[10]

## *Conclusion*

I find that the three Hyundai vehicles listed as "exempt" on Schedule C (and subsequently listed as belonging to Mr. Fonseco on the amended Statement of Financial Affairs) are property of this bankruptcy estate because: (1) Fla. Stat. 710.111 requires custodial property to be titled in the name of the parent, "as custodian for (name of minor) under the Florida Uniform Transfers to Minors Act;" (2) there is insufficient evidence to rebut the presumption of ownership created by the certificates of title; and (3) the facts of this case do not give rise to

---

[7] *In re Kirk*, 381 B.R. at 803 (citing *Georgia Pacific Corp. v. Sigma Serv. Corp.*, 712 F.2d 962, 969 (5th Cir. 1983)).

[8] *In re Todd*, 391 B.R. 504, 508 (Bankr. S.D. Fla. 2008) (Olson, J.) (citing *Frank v. Eeles*, 13 So. 2d 216, 217-18 (Fla. 1943)).

[9] *Id.* (citations omitted).

[10] *See* [ECF No. 27-1], at 8 (the Debtor at her 341 meeting stating, "He didn't want them in his name, because he didn't want responsibility, my dad is retired, of having anything happen and come back to him.").

creation of a trust. It is accordingly **ORDERED** that the Trustee's objection at **ECF No. 14** is **SUSTAINED** and the three vehicles are determined to be non-exempt property of this bankruptcy estate.

# # #

*The Clerk of Court is directed to provide copies of this order to all registered interested parties.*