**Tagged Opinion**



**ORDERED in the Southern District of Florida on January 06, 2011.**

John K. Olson, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov**

**In re**:

Lillian A. **DiStefano**,

Debtor.

_____/

Case No.: 10-19596-BKC-JKO

Chapter 7

**Order Denying Debtor's Motion for Reconsideration [ECF No. 36]**

On January 3, 2011, the Debtor filed a Motion to Reconsider my December 22, 2010 Order Sustaining the Trustee's Objection to Debtor's Claim of Exemptions[1] (the "Order"). The Debtor argues that her Memorandum of Law[2] was "not considered by the Court . . . [or] . . . was not received by the Court . . . " because:

- I did not discuss a case which the Debtor cited as being exceptionally on point;

- I confused facts when I commented that the notation "New Car for Lily" on a check used to purchase one of the Debtor's vehicles presumably referred to the Debtor (I did so because her name is Lillian and she is the owner listed on the certificate of title);

---

[1] *See* [ECF Nos. 14, 35, & 36].

[2] *See* [ECF No. 28].

1

- By titling the Order as "Sustaining the Trustee's Objection to Debtor's Claim of Exemptions" my focus was improperly on whether the three vehicles are exempt when that point was conceded by the Debtor in her Memorandum of Law; and

- I cited a case which the Debtor believes is distinguishable.

The Debtor's Memorandum of Law[3] was received and considered along with the Trustee's pleading.[4] I will address each of the Debtor's specific arguments below.

*Discussion*

First, the case which the Debtor cited as being exceptionally on point is *In re Smith*, 73 B.R. 211 (Bankr. N.D. Fla. 1986). Although the debtor there did not advance the theory, Judge Killian concluded *sua sponte* in *Smith* that the parties to the transaction had unwittingly created a "simple unwritten express trust" such that the Trustee's interest was subject to the daughter's beneficial interest.

*Smith* is inapposite because it concerns a transfer made before Florida enacted its version of § 9 of the Uniform Transfers to Minors Act.[5] The transfers before me all took place after 1985 and are governed by the Act,[6] which provides in relevant part that:

> (1) Custodial property is created and a transfer is made whenever:
>
> . . .
>
> (f) A certificate of title issued by a department or agency of a state or of the United States which evidences title to tangible personal property is either:

---

[3] *Id.*

[4] [ECF No. 27].

[5] Fla. Stat. Ann. § 710.111 (West 2010) (enacted 1985).

[6] *Id.*

2

  1. Issued in the name of the transferor, an adult other than the transferor, or a trust company, followed in substance by the words: "as custodian for (name of minor) under the Florida Uniform Transfers to Minors Act"; or

  2. Delivered to an adult other than the transferor or to a trust company, endorsed to that person followed in substance by the words: "as custodian for (name of minor) under the Florida Uniform Transfers to Minors Act"; or

(g) An interest in any property not described in paragraphs (a)-(f) is transferred to an adult other than the transferor or to a trust company by a written instrument in substantially the form set forth in subsection (2).

(2) An instrument in the following form satisfies the requirements of subparagraph (1)(a)2. and paragraph (1)(g):

"TRANSFER UNDER THE FLORIDA
UNIFORM TRANSFERS TO MINORS ACT

I, (name of transferor or name and representative capacity if a fiduciary) hereby transfer to (name of custodian) , as custodian for (name of minor) under the Florida Uniform Transfers to Minors Act, the following: (insert a description of the custodial property sufficient to identify it).

Dated: _____

(signature)

(name of custodian) acknowledges receipt of the property described above as custodian for the minor named above under the Florida Uniform Transfers to Minors Act.

Dated: _____

(signature of custodian) ."

3

>(3) A transferor shall place the custodian in control of the custodial property as soon as practicable.[7]

The Debtor does not dispute the Trustee's allegation that all three certificates of title here are missing the Fla. Stat. § 710.111 custodial notation.

Where a certificate of title exists, it "invariably establishes presumptive ownership"[8] and this Debtor presumptively owns all three vehicles free and clear of encumbrances. I ruled in the Order that the self-serving affidavits and sparse documentation presented by the Debtor are insufficient to overcome the presumption created by the certificates of title. Judge Killian was not required to address such a presumption in *Smith* because Fla. Stat. § 710.111 did not apply to the transactions at issue there.

Second, I commented in the Order that the notation "New Car for Lily" on the check used to purchase one of the vehicles referred to that vehicle's presumptive owner, Debtor Lillian A. DiStefano. That the Debtor's mother and daughter are also named Lillian does not render my conclusion a manifest error of fact for reconsideration purposes.

---

[7] *Id.*

[8] *In re Kirk*, 381 B.R. 800, 802 (Bankr. M.D. Fla 2007) (quoting *Nash Miami Motors, Inc. v. Bandel*, 47 So. 2d 701, 703 (Fla. 1950)); *see also Cannova v. Carran*, 92 So.2d 614, 619 (Fla. 1957) (holding that a person is presumed to own all property that is titled in her name) ("The presumption is that [the individual] was the owner of all of the property which stood in his name. The quantum of proof required to overcome such presumption is ably discussed in *Quinn v. Phipps*, 1927, 93 Fla. 805, 113 So. 419, 422, 54 A.L.R. 1173 and numerous other cases of this court. In the *Quinn* case, *supra*, we said: 'From an examination of the textbooks and many English and American cases touching this question the law seems well settled that a court of equity will raise a constructive trust and compel restoration where one, through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold. * * * 'This court has repeatedly announced the rule that a constructive trust may be proven by parol testimony, but that the evidence to establish such a trust must be so clear, strong, and unequivocal as to remove from the mind of the chancellor every reasonable doubt as to the existence of the trust. *Lofton v. Sterrett*, 23 Fla. 565, 2 So. 837; *Geter v. Simmons*, 57 Fla. 423, 49 So. 131; *Johnston v. Sherehouse*, 61 Fla. 647, 54 So. 892; *Rogero v. Rogero*, 66 Fla. 6, 62 So. 899; *McGill v. Chappelle*, 71 Fla. 479, 71 So. 836.' (Emphasis added.) The Quinn case, *supra*, has been cited and adhered to in many decisions of this Court. *See Lightfoot v. Rogers*, Fla. 1951, 54 So.2d 237; *Simpson v. Hoffman*, Fla.1954, 75 So.2d 703; *Tillman v. Pitt Cole Co.*, Fla.1955, 82 So.2d 672; and *Lindley v. Lindley*, Fla.1955, 84 So.2d 17, 20.").

Third, I titled Order as an "Order Sustaining the Trustee's Objection to Debtor's Claim of Exemptions" because that was the pleading which needed to be ruled upon. The Debtor's arguments changed over time and the ultimate issue framed by the pleadings was whether the three Hyundai vehicles are property of this bankruptcy estate. The bulk of my discussion in the Order addressed precisely that issue. The Debtor's assertion that the Order focused on something it did not simply because the Order was titled a particular way for docketing purposes is frivolous.

Fourth, the Debtor argues that I relied upon a case which is distinguishable.[9] Every single cite to the *Kirk* case in the Order immediately follows a general proposition of law. Factually distinguishing a case cited solely to support general propositions of law is analytically unhelpful.

*Conclusion*

In the Order, I found that the three Hyundai vehicles listed as "exempt" on Schedule C (and subsequently listed on the Amended Statement of Financial Affairs as belonging to "Pedro Fonseca Equitable Owner via potential resulting Trust") are property of this bankruptcy estate. There is no Fla. Stat. § 710.111 custodial notation on any of the three certificates of title to support the Debtor's ultimate argument that the Debtor holds bare legal title for the benefit of her daughters, and there is insufficient evidence to rebut the presumption of ownership created by

---

[9] *In re Kirk*, 381 B.R. 800 (Bankr. M.D. Fla. 2007) (Under Florida law, Chapter 7 debtor, who was named a joint owner on the certificate of title of a motor vehicle that was purchased prepetition by debtor's father as a gift for debtor's then 15-year-old daughter, held both legal and equitable ownership interests in the vehicle, and so it was subject to turnover and administration by trustee; vehicle's registration established that debtor and daughter owned vehicle as joint tenants, certificate did not reflect that vehicle was intended to be held as custodial property, debtor presented no trust agreement or other evidence establishing that vehicle was being held in trust for the benefit of her daughter, debtor presented no evidence that she held an equitable lien in the vehicle, and debtor's actions in obtaining insurance coverage for vehicle and paying premiums and maintenance costs were inconsistent with her assertion that she had no beneficial or equitable interest in the vehicle.)

5

the certificates of title. The Debtor's reconsideration motion fails to satisfy Fed. R. Bankr. P. 9023 reconsideration standards,[10] and it is accordingly **ORDERED** that the reconsideration motion at **ECF No. 36** is **DENIED**.

# # #

*The Clerk of Court is directed to provide copies of this order to all registered interested parties.*

---

[10] A motion for reconsideration under Fed. R. Bankr. P. 9023, applying Fed. R. Civ. P. 59(e), may be granted if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact. *In re Prince*, 85 F.3d 314, 36 (7th Cir. 1996), *cert. denied*, 519 U.S. 1040 (1996). The decision to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the trial court and may be reversed only for an abuse of discretion. *Id.* A party may not utilize Rule 59(e) to complete presentation of the party's case after the court has ruled against that party. *Matter of Reese*, 91 F.3d 37 (7th Cir. 1996). A motion to alter or amend a judgment under Rule 59(a) may be granted on four grounds: (1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law. *In re Arden Properties, Inc.*, 248 B.R. 164 (Bankr. D. Ariz. 2000).